UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

DAVID PIRK, ANDRE JENKINS, a/k/a
Little Bear, TIMOTHY ENIX a/k/a Blaze,
FILIP CARUSO a/k/a Filly, EDGAR DEKAY, II
a/k/a Ed a/k/a Special Ed, JASON WILLIAMS
a/k/a Toop, THOMAS KOSZUTA a/k/a Kazoo,
GREGORY WILLSON a/k/a Flip, EMMETT
GREEN, ROBERT OSBORNE, JR., STANLEY
OLEJNICZAK, JACK WOOD a/k/a Jake a/k/a
Snake, RYAN MYRTLE, THOMAS SCANLON
a/k/a Tom, GLEN STACHARCZYCK a/k/a
Turbo, and SEAN MCINDOO a/k/a Professor,

Defendants.

**DECISION AND ORDER**

1:15-CR-00142 EAW



## BACKGROUND

The above-captioned matter involves 12 remaining defendants[1] named in a 46-count Second Superseding Indictment (Dkt. 33) ("Indictment") returned on March 16, 2016, alleging various crimes, including a conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), in connection with the operation of the Kingsmen Motorcycle Club ("KMC").

The Court initially referred all pretrial matters to Magistrate Judge Michael J. Roemer, pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B). (Dkt. 35). On September 7,

---

[1]    Four Defendants—Edgar Dekay, II a/k/a Ed a/k/a Special Ed (Dkt. 412), Thomas Koszuta a/k/a Kazoo (Dkt. 296), Emmett Green (Dkt. 257), and Ryan Myrtle (Dkt. 330)—have pleaded guilty.

2016, Judge Roemer issued a Decision and Order that set December 7, 2016, as the deadline to file pretrial motions. (Dkt. 294).[2] In an effort to promote the expeditious handling of the pretrial motions, the undersigned subsequently terminated the referral to Judge Roemer of many of the pretrial motions. (Dkt. 446; Dkt. 473; Dkt. 534).

This Decision and Order addresses the following aspects of Defendants' pretrial motions that are presently pending before the undersigned:

1.  Motion for Bill of Particulars (Dkt. 378) filed by Glen Stacharczyck ("Stacharczyck");

2.  Motion for Bill of Particulars (Dkt. 382) filed by Jack Wood ("Wood");

3.  Motion for Bill of Particulars, and Motion to Dismiss Counts 1-2, 14-16, 45-46 (Dkt. 383) filed by Sean McIndoo ("McIndoo");

4.  Motion to Dismiss Counts 41 and 42, and Motion for Bill of Particulars (Dkt. 385) filed by Thomas Scanlon ("Scanlon");

5.  Motion for Bill of Particulars (Dkt. 387) filed by Robert Osborne, Jr. ("Osborne");

6.  Motion to Dismiss Counts 1, 2, 45, and 46, and Motion for Bill of Particulars (Dkt. 392) filed by Timothy Enix ("Enix");

7.  Motion for Bill of Particulars (Dkt. 394) filed by Stanley Olejniczak ("Olejniczak");

8.  Motion to Dismiss Counts 1, 2, 45, and 46, and Motion for Bill of Particulars (Dkt. 400) filed by Jason Williams ("Williams");

---

[2] The deadline for defendant Filip Caruso was subsequently extended by Text Order signed by the undersigned to February 2, 2017 (Dkt. 444); the deadline for defendant David Pirk was subsequently extended by Text Order signed by Judge Roemer to January 9, 2017 (Dkt. 407); and the deadline for defendant Andre Jenkins was subsequently extended by Text Order signed by Judge Roemer to March 7, 2017 (Dkt. 393).

9.    Motion to Dismiss Counts 1, 2, and 46, and Motion for Bill of Particulars (Dkt. 434) filed by David Pirk ("Pirk");

10.   Motions to Dismiss Counts 1, 2, 36, 38, 40, 45, and 46, and Motion for Bill of Particulars (Dkt. 467) filed by Filip Caruso ("Caruso"); and,

11.   Motion to Dismiss Counts 1, 2, 19, 20, 21, 22, 45 and 46, and Motion for Bill of Particulars (Dkt. 522) filed by Andre Jenkins ("Jenkins").

In short, this Decision and Order is intended to address all pending motions to dismiss and motions for bills of particular,[3] except for the following which will be addressed separately: (1) Jenkins' motion to dismiss based on double jeopardy grounds (Dkt. 522); and (2) Scanlon's motion to dismiss Counts 28, 29, and 30 and motion for a bill of particulars regarding Counts 27 and 28 (Dkt. 385).[4]

---

[3]    Defendants have moved to join in their co-defendants' motions and arguments. (*See* Dkt. 378 at ¶ 56 (Stacharczyck); Dkt. 382 at ¶ 21 (Wood); Dkt. 383 at ¶ 5 (McIndoo); Dkt. 385 at 45 (Scanlon); Dkt. 387 at ¶ 38 (Osborne); Dkt. 392-7 at 49 (Enix); Dkt. 400 at 4 (Williams); Dkt. 394 at 29 (Olejniczak); Dkt. 434 at ¶ 161 (Pirk); Dkt. 467 at ¶ 68 (Caruso); Dkt. 522 at ¶ 230 (Jenkins)). The Government objects on the ground that Defendants have failed to provide proper notice to the Government and have prevented it from properly analyzing and responding to the motions that may apply to each Defendant. (*See, e.g.*, Dkt. 451 at 43-44; Dkt. 452 at 35). It nevertheless incorporates by reference its responses to each Defendant's motions to the extent joinder is permitted. (*See, e.g.*, Dkt. 451 at 43-44; Dkt. 452 at 35).
   The Court does not disagree that, for the most part, Defendants' requests for joinder are perfunctory and conclusory. Nonetheless, to the extent Defendants seek any additional relief through requests for joinder, this Decision and Order on each Defendant's motion is applicable to that Defendant's co-defendants, to the extent they have sought to join in the motion and arguments.

[4]    This Decision and Order also does not address Pirk's motion for severance and to change venue (Dkt. 434; Dkt. 435) or Jenkins' motion for change of venue (Dkt. 522). As indicated at the oral argument on May 9, 2017, the Court intends to address those motions closer to the time of trial, set to commence on January 16, 2018.

For the reasons set forth below, the motions to dismiss are denied, and the motions for bills of particular are denied, except to the extent that particularization is sought for Counts 34-36 and 45-46, with respect to which the Court reserves decision and requests supplemental briefing from the Government within 14 days of the entry of this Decision and Order, with the Defendants seeking particularization on those counts to provide any response within 14 days after the filing of the Government's supplemental briefing, at which point the Court will take the matter under advisement.

## MOTIONS TO DISMISS

Federal Rule of Criminal Procedure 12(b) states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). "The general issue in a criminal trial is, of course, whether the defendant is guilty of the offense charged." *United States v. Doe*, 63 F.3d 121, 125 (2d Cir. 1995). A pre-trial motion to dismiss an indictment under Rule 12 must satisfy a "high standard." *United States v. Lazore*, 90 F. Supp. 2d 202, 203 (N.D.N.Y. 2000). "In deciding a motion to dismiss an indictment for failure to state a criminal offense, a court must assume the truth of the allegations in the indictment and determine whether the indictment is valid on its face." *United States v. Larson*, No. 07-CR-304S, 2011 WL 6029985, at *1 (W.D.N.Y. Dec. 5, 2011) (citing *United States v. Bicoastal Corp.*, 819 F. Supp. 156, 158 (N.D.N.Y. 1993)). This Court may not "look beyond the face of the indictment and draw inferences as to the proof that would be introduced by the government at trial." *Id.* (quoting *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998)) (alterations omitted).

- 4 -

Federal Rule of Criminal Procedure 7(c) requires that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged. . . ." Fed. R. Crim. P. 7(c)(1). An indictment is "sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Alfonso*, 143 F.3d at 776; *see also United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) ("An indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events."). The indictment "need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Alfonso*, 143 F.3d at 776.

## I.     Count 1 – the RICO conspiracy

Count 1 of the Indictment charges a RICO conspiracy in violation of 18 U.S.C. § 1962(d), as to all Defendants. It alleges, in part, as follows:

> [T]here existed in the Western District of New York, and elsewhere, a criminal organization, namely the Kingsmen Motorcycle Club ("KMC"). The KMC, including its leadership, members, and associates constituted an enterprise, as defined by Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact, the activities of which affected interstate and foreign commerce, consisting of [each of] the [named] defendants . . . and others, known and unknown. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

(Dkt. 33 at ¶ 25).

- 5 -

The Indictment then describes the Defendants' alleged roles within the KMC enterprise. (*Id.* at ¶ 26). It alleges that all Defendants were members of the KMC, and that certain members (that is, all Defendants except Olejniczak) had additional roles within the KMC aside from their membership. (*Id.*). As relevant to the instant motions, Pirk was the KMC National President. (*Id.*). Jenkins, Scanlon, McIndoo and Willson were Nomads, (*id.*), which are KMC members who were "not required to regularly attend all of the enterprise's meetings and other events, but w[ere] expected to serve the interests of the KMC enterprise, including fighting other clubs and committing violent crimes on behalf of the KMC" and who "answered only to the National President, or Regional Presidents passing down orders to the Nomad President from the National President," (*id.* at ¶ 7). Enix was the Florida/Tennessee Regional President. (*Id.* at ¶ 26). Caruso was the New York Northern Regional KMC President. (*Id.*). Williams was the Vice President of the North Tonawanda Chapter. (*Id.*). Osborne was the Olean Chapter President. (*Id.*). Wood was the Sergeant at Arms of the Arcade Chapter. (*Id.*). Scanlon was the Olean Chapter President and New York Regional President (in addition to being a Nomad). (*Id.*). Stacharczyck was the North Tonawanda Chapter President. (*Id.*).

The Indictment alleges that the purposes of the KMC enterprise included:

a.    Promoting and enhancing the enterprise and its members and associates activities, including, but not limited to, distribution of controlled substances, maintaining premises for use and distribution of controlled substances, possession, use and sale of firearms, sale of untaxed cigarettes, and other criminal activities including promoting prostitution;

b.      Preserving and protecting the power, territory, and reputation of the enterprise and its[] members through intimidation, violence, threats of violence, assaults, murder, and attempted murder;

c.      Placing victims, potential victims, potential witnesses, and others in fear of the enterprise, its members, and associates, through violence and threats of violence; and

d.      Generating and maximizing the profits, reputation, and membership of the enterprise from a variety of illegal activity including but not limited to drug trafficking, firearm sales, sale of untaxed cigarettes, sale of alcohol, gambling, robbery, and prostitution.

(*Id.* at ¶ 27).

Defendants McIndoo, Pirk, Enix, Jenkins, Williams, and Caruso all move to dismiss Count 1 of the Indictment. Williams joins in the motions of his co-defendants with regard to Count 1, (Dkt. 400 at 7), while Caruso specifically joins in the motions of Enix, McIndoo, and Pirk with regard to Count 1, (Dkt. 468 at ¶ 16). Accordingly, the Court will specifically address the motions to dismiss Count 1 filed by McIndoo, Pirk, Enix, and Jenkins.

### A. Enterprise-Based Challenges to Count 1

McIndoo and Pirk both argue, in the main, that Count 1 should be dismissed because it does not adequately allege the existence of a criminal "enterprise." (*See* Dkt. 383; Dkt. 434-1).

McIndoo argues that the Indictment equates "mere membership in the motorcycle club with conspiratorial agreement" and seeks to "use the KMC 'structure' as a proxy 'enterprise' when it is clear that, despite the apparent interests of some, the club never agreed to become a 'criminal' organization and in fact many of the illegal acts alleged in

the indictment are admitted in the indictment as being on account of this fact." (Dkt. 383 at ¶ 5). In other words, according to McIndoo, "the mere fact that a few members of an organization are committing crimes—including crimes against each other—cannot convert that organization itself into an 'enterprise.'" (Dkt. 520 at 6). Thus, McIndoo argues that "when one looks at the allegations of the indictment stripped of the implied club superstructure, we have little more than allegations of joint criminal activity, though possibly not a 'pattern', but with none of the structural support required under *Boyle* which cannot establish an 'enterprise.'" (Dkt. 383-1 at 37).

Pirk, like McIndoo, raises enterprise-based challenges to Count 1 of the Indictment. (Dkt. 434-1 at 5). He contends that the Indictment identifies two enterprises, but "does not sufficiently allege what enterprise he allegedly conspired to participate in: (1) KMC as an enterprise which has existed since 1959 and is a RICO enterprise according to the Government or (2) the group of 'certain members of the KMC' who allegedly sought to convert KMC to a 1% club starting in 2013." (Dkt. 521 at 4). He further argues that the Indictment does not allege any enterprise that exists separate and distinct from Defendants themselves, characterizing the Indictment as "merely alleg[ing] the various leadership positions under the noncriminal KMC chain of command." (Dkt. 434-1 at 10). He further argues that the enterprise was not ongoing based on the Indictment's allegation that the conspiracy to convert the KMC from an existing non-criminal enterprise to a criminal enterprise occurred from only 2013 to 2016. (*Id.* at 9-10). Pirk argues that, even assuming that the "enterprise" was properly alleged, the Government conflates the "enterprise" with the separate element of "pattern of

racketeering." (*Id.* at 11). He argues that the Indictment sets forth "no relationship . . . between these defendants other than their various appearances in the alleged racketeering pattern." (*Id.* at 12).

The RICO conspiracy statute, 18 U.S.C. § 1962(d), provides that it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). The substantive RICO offense that Defendants are charged in Count 1 as having conspired to violate—18 U.S.C. § 1962(c)—provides that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." *Id.* § 1962(c). RICO defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." *Id.* § 1961(4). Among the activities included in "racketeering activity" are crimes such as murder, kidnapping, robbery, and controlled substance offenses. *Id.* § 1961(1). RICO defines "pattern of racketeering activity" as "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within 10 years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." *Id.* § 1961(5).

"To establish a RICO conspiracy, the government must prove that a defendant agreed to participate in the affairs of the enterprise through a pattern of racketeering activity." *United States v. Yannotti*, 541 F.3d 112, 121 (2d Cir. 2008) (rejecting argument

that RICO conspiracy conviction cannot stand absent proof of defendant's personal involvement in a timely-charged predicate act); *see also United States v. Applins*, 637 F.3d 59, 77 (2d Cir. 2011) ("RICO conspiracy requires proof 'that a defendant agreed with others (a) to conduct the affairs of an enterprise (b) through a pattern of racketeering' and . . . 'the conduct prong requires only that conspirators reached a meeting of the minds as to the operating of the affairs of the enterprise through a pattern of racketeering conduct.'" (quoting *United States v. Basciano*, 599 F.3d 184, 199 (2d Cir. 2010))). "There is no requirement of some overt act or specific act in the [RICO conspiracy] statute. . . ." *Salinas v. United States*, 522 U.S. 52, 63 (1997). In short, "[t]he relevant inquiry is whether the defendant agreed with his criminal associates to form the RICO enterprise." *Applins*, 637 F.3d at 77 (quotation omitted).

"[T]he agreement proscribed by section 1962(d) is [a] conspiracy to participate in a charged enterprise's affairs, not [a] conspiracy to commit predicate acts." *Yannotti*, 541 F.3d at 121 (quoting *United States v. Persico*, 832 F.2d 705, 713 (2d Cir. 1987)). Therefore, "a conspirator need not be fully informed about his co-conspirators' specific criminal acts provided that he agreed to participate in the broader criminal conspiracy and the acts evincing participation were not outside of the scope of the illegal agreement." *Id.* at 122.

> "A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other." *Salinas*, 522 U.S. at 63-64, (internal citation omitted); *see also United States v. Zichettello*, 208 F.3d 72, 100 (2d Cir. 2000) (holding that "no rule" requires "the government to prove that a [RICO] conspirator knew of all

- 10 -

criminal acts by insiders in furtherance of the conspiracy" as long as it shows that defendant possessed knowledge of "the general contours of the conspiracy"); *United States v. Rastelli*, 870 F.2d 822, 828 (2d Cir. 1989) (stating that a defendant may agree to join a RICO conspiracy without knowing the identities of "all the other conspirators" and without "full knowledge of all the details of the conspiracy").

*Id.*

In other words, "[t]he RICO conspiracy statute, § 1962(d), broadened conspiracy coverage by omitting the requirement of an overt act; it did not, at the same time, work the radical change of requiring the Government to prove each conspirator agreed that he would be the one to commit two predicate acts." *Salinas*, 522 U.S. at 64. "It makes no difference that the substantive offense under § 1962(c) requires two or more predicate acts. The interplay between subsections (c) and (d) does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense." *Id.* at 65. In *Salinas*, the Supreme Court rejected the argument that the Government must prove that the defendant committed two predicate acts, and concluded that there was sufficient evidence to support one defendant's conviction for RICO conspiracy where the evidence showed that he knew about and agreed to facilitate another defendant's scheme to commit two acts of racketeering activity (accepting bribes), or in other words, a scheme to violate § 1962(c). *Id.* at 66.

In *Applins*, the Second Circuit concluded that the establishment of an enterprise is not a necessary element of RICO conspiracy. 637 F.3d at 75. With respect to the "enterprise" requirement, the Second Circuit explained: "A RICO enterprise 'is proved

by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'   RICO reaches 'a group of persons associated together for a common purpose of engaging in a course of conduct.'"  *Id.* at 73 (quoting *United States v. Turkette*, 452 U.S. 576, 580, 583 (1981)).  The Second Circuit further explained: "'[T]he existence of an association-in-fact is oftentimes more readily proven by 'what it does, rather than by abstract analysis of its structure.'"  For this reason, [the Second Circuit has] stated that 'proof of various racketeering acts may be relied on to establish the existence of the charged enterprise.'" *Id.* (quoting *United States v. Coonan*, 938 F.2d 1553, 1559, 1560 (2d Cir. 1991)).  Nevertheless, it concluded, based on *Salinas*, that existence of an enterprise is not an element of RICO conspiracy:

> RICO conspiracy requires proof "that a defendant agreed with others (a) to conduct the affairs of an enterprise (b) through a pattern of racketeering" and that "the conduct prong requires only that conspirators reached a meeting of the minds as to the operating of the affairs of the enterprise through a pattern of racketeering conduct."

*Id.* at 77 (quoting *Basicano*, 599 F.3d at 199).

Based on *Applins*, at least one court in this district has denied a motion to dismiss a RICO conspiracy count on the basis that an "enterprise" is not necessary to state the offense of a RICO conspiracy.  *Larson*, 2011 WL 6029985, at *5.  In *Larson*, the court concluded that the indictment adequately stated a RICO conspiracy offense where it alleged:

> that the charged Defendants "unlawfully and knowingly combined, conspired, confederated and agreed, together, with each other, and with others, to violate the provisions of . . . [§ 1962(c)]; that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Local 17 Criminal Enterprise through a pattern of racketeering activity," and that

"[i]t was a part of the conspiracy that during the aforesaid period, [the defendants], together and with others, agreed that a conspirator employed by or associated with the Local 17 Criminal Enterprise would commit at least two acts of racketeering activity in the conduct of the affairs of the Local 17 Criminal Enterprise."

*Id.* The court reasoned that "[u]nder *Applins*, it is clear that the government is not required to prove the establishment of an enterprise in order to convict Defendants of RICO conspiracy," and as a result, the indictment's allegations regarding the Local 17 Criminal Enterprise were not necessary in order to state the offense of a RICO conspiracy. *Id.*

Here, Count 1 of the Indictment adequately states the necessary elements of a RICO conspiracy. Count 1 states, in a manner that substantially tracks the statutory language of § 1962(d), that Defendants "did knowingly, willfully, and unlawfully, combine, conspire, confederate, and agree, together and with others, to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity. . . ." (Dkt. 33 at ¶ 28). It further alleges that Defendants "and others, known and unknown, agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the enterprise." (*Id.* at ¶ 29). As in *Larson*, this "alleges an agreement to conduct the affairs of an enterprise through a pattern of racketeering activity, and as such is sufficient to state a RICO conspiracy offense under 18 U.S.C. § 1962(d)." *Larson*, 2011 WL 6029985, at *5 (citing *Applins*, 637 F.3d at 74 (noting that

to prove a RICO conspiracy, the government must establish the existence of an agreement to violate RICO's substantive provisions)).[5]

Moreover, even if the Indictment was required to allege the existence of an enterprise in order to state the offense of a RICO conspiracy, the Court finds that it has done so sufficiently in this case. In *Boyle v. United States*, 556 U.S. 938 (2009), the Supreme Court held that "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946. In so holding, the Supreme Court rejected the petitioner's argument that a RICO enterprise "must have at least some additional structural attributes, such as a structural "hierarchy," "role differentiation," a "unique modus operandi," a "chain of command," "professionalism and sophistication of organization," "diversity and complexity of crimes," "membership dues, rules and regulations," "uncharged or additional crimes aside from predicate acts," an "internal discipline mechanism," "regular meetings

---

[5]    In his reply papers, McIndoo attempts to distinguish *Applins* based on its procedural posture, pointing out that it "raised a jury instruction issue" and did not arise in the context of a motion to dismiss. (Dkt. 520 at 6). He also contends that, in this case, the Government "is not alleging a mere 'agreement' as the basis for Count 1. It is attempting to prove the conspiracy through proof of the existence of an enterprise and racketeering acts actually in furtherance of the enterprise." (*Id.*). However, McIndoo's argument does not address the instruction from *Applins* that "it is sufficient to allege . . . that the defendants agreed to the commission of multiple violations of a specific statutory provision that qualifies as RICO racketeering activity," and that "establishment of an enterprise is not an element of the RICO conspiracy offense." 637 F.3d at 75, 81; *see also Larson*, 2011 WL 6029985, at *6 ("[T]his Court emphasizes that, under *Applins*, the actual establishment of an enterprise need not be alleged as an element of a RICO conspiracy."). In other words, dismissal of the Indictment on the grounds that it fails to adequately allege an enterprise would be in direct contravention of the teachings of *Applins*, and McIndoo's attempts to argue otherwise are unpersuasive.

regarding enterprise affairs," an "enterprise 'name,'" and "induction or initiation ceremonies and rituals." *Id.* at 948.

The Indictment in this case more than sufficiently alleges the existence of an enterprise in accordance with *Boyle*—in fact, the alleged KMC enterprise meets the higher threshold features such as hierarchy, role differentiation, membership rules, and chain of command, that the Supreme Court in *Boyle* held was not even necessary. With respect to the first structural feature—purpose—the Indictment alleges that one purpose of the KMC was to "promot[e] and enhance[e] the enterprise and its members and associates activities, including, but not limited to, distribution of controlled substances, maintaining premises for use and distribution of controlled substances, possession, use and sale of firearms, sale of untaxed cigarettes, and other criminal activities including promoting prostitution." (Dkt. 33 at ¶ 27(a)). Another purpose was to "preserv[e] and protect[]the power, territory, and reputation of the enterprise and its' members through intimidation, violence, threats of violence, assaults, murder, and attempted murder." (*Id.* at ¶ 27(b)). A third purpose was to "[g]enerat[e] and maximize[e] the profits, reputation, and membership of the enterprise from a variety of illegal activity" listed above. The Indictment also alleges the second structural feature contemplated by *Boyle*: relationships among Defendants within the KMC—in fact, the Indictment alleges a specific hierarchal structure that is not even necessary under *Boyle*. (*Id.* at ¶¶ 3-14, 26). Finally, the Indictment alleges the longevity contemplated by *Boyle* as it states that the KMC was started in 1959, with the alleged racketeering activity starting no later than 2006 and continuing through 2016. (*See id.* at ¶¶ 2, 28).

To the extent that McIndoo's argument invites the Court to look beyond the facial sufficiency of the Indictment and make a determination of whether only a few members did in fact try to make the KMC into a 1% club (*see* Dkt 383 at ¶ 11 ("[T]he record shows that many of the KMC members did not ascribe to the "1%" thinking. . . ." (citing Transcript of Enix's Florida Detention Hearing)), the Court declines to do so.

First, that is a factual question not appropriate for resolution on a motion to dismiss. McIndoo argues that the Court may consider undisputed factual issues and dismiss counts in an indictment that "rest on an invalid legal theory or a legal theory which is untenable under the undisputed facts or fact which can be found without the need for a trial," or in other words, "where an essential component of the alleged offense cannot be established, and that a trial of facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." (Dkt. 520 at 3). But in this instance, it appears that McIndoo is asking the Court to consider whether a particular defendant agreed to participate in the affairs of the KMC through a pattern of racketeering activity, which is the ultimate question in this case, and thus is not appropriate for resolution in a pretrial motion under Rule 12(b). *See* Fed. R. Crim. P. 12(b)(1); *Doe*, 63 F.3d at 125 ("The general issue in a criminal trial is, of course, whether the defendant is guilty of the offense charged.").

Second, McIndoo's argument ignores the fact that the Indictment plainly alleges that the enterprise is the KMC in its entirety, and not some subset of the KMC: "[T]here existed in the Western District of New York, and elsewhere, a criminal organization, namely the Kingsmen Motorcycle Club ("KMC"). *The KMC*, including its[] leadership,

- 16 -

members, and associates *constituted an enterprise*." (Dkt. 33 at ¶ 25 (emphasis added)). Whether the KMC in its entirety did not, in fact, constitute an enterprise, and what impact, if any, that will ultimately have on the Government's ability to prove the RICO conspiracy count, is an issue for trial—not one that should be resolved in a pretrial motion.

Third, McIndoo has not pointed to any case in which a court dismissed—at the pretrial motion to dismiss stage—a RICO conspiracy count because there was an insufficient amount of criminal activity occurring throughout the enterprise, despite the indictment alleging the requisite elements of an enterprise; indeed, at oral argument, McIndoo's counsel conceded that such a case does not exist. *Cf. Zichettello*, 208 F.3d at 100 (holding that "no rule" requires "the government to prove that a [RICO] conspirator knew of all criminal acts by insiders in furtherance of the conspiracy" as long as it shows that defendant possessed knowledge of "the general contours of the conspiracy"). For all of these reasons, the Court denies the motion to dismiss Count 1 based on the enterprise-based challenges to the alleged RICO conspiracy.

### B. Vagueness Challenges to Count 1

Defendants Enix and Jenkins challenge Count 1 as unconstitutionally vague. (Dkt. 392-7 at 6-11; Dkt. 522 at ¶¶ 25-33). Enix seeks dismissal of Count 1 as unconstitutionally overbroad and vague as applied to him, in violation of the First Amendment and the Due Process Clause of the Fifth Amendment. (Dkt. 392-7 at 6-11). According to Enix, the RICO conspiracy statute, as applied, would punish his lawful exercise of First Amendment conduct such as speech and peaceable assembly. (*Id.* at 7).

Enix argues that he has, in essence, been charged as being in a club with others who may have engaged in drug activity, and as such, the RICO conspiracy statute is unconstitutionally vague as applied to him because it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." (*Id.* at 8-9 (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).

Jenkins also argues that Count 1 should be dismissed as void for vagueness, contending that no person in his position could understand what conduct was prohibited, particularly because the Government is not required to prove an enterprise or any pattern of acts of racketeering.   (Dkt. 522 at ¶¶ 25-33).   He also raises First Amendment vagueness arguments, similar to those raised by Enix. (*Id.* at ¶¶ 41-47).

"A statute is unconstitutionally vague if it 'forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Coonan*, 938 F.2d at 1561-62 (quoting *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926)).   "Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their conduct is at risk." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988).

"Courts in the Second Circuit have consistently rejected the argument that the language of the RICO statute is unconstitutionally vague." *United States v. Marchese*, No. 89 Cr. 229(7S)(PKL), 1991 WL 60338, at *3 (S.D.N.Y. Apr. 11, 1991) (collecting cases); *see also Bingham v. Zolt*, 66 F.3d 553, 566 (2d Cir. 1995) (noting that the Second

Circuit has "consistently held that RICO's pattern and enterprise requirements are not unconstitutionally vague").

In *Coonan*, the Second Circuit rejected the defendants' argument that the "enterprise" requirement of RICO was unconstitutionally vague and was "so elastic that it permits unbridled and arbitrary prosecutorial choices and irrelevant and prejudicial proof." 938 F.2d at 1561. The Second Circuit held that the defendants:

> had more than adequate notice that the Westies was an enterprise which fell within RICO's ambit. The statute clearly indicates that an enterprise includes a group of individuals associated in fact, that is, a group of persons associated together for a common purpose of engaging in a course of conduct. It is patently obvious that the Westies was such an association. Moreover, RICO was plainly intended to encompass the illegal activities of organized crime and the Westies was the very type of organization that Congress intended to eradicate through the adoption of RICO.

*Id.* at 1562.

In *United States v. Coiro*, 922 F.2d 1008 (2d Cir. 1991), the Second Circuit rejected the defendant's challenge to the RICO "pattern" requirement as unconstitutionally vague; specifically, he had argued that "courts have had difficulty defining a 'pattern of racketeering activity,' and also that, apart from its constitutionality, his conduct in this case did not establish such a pattern." *Id.* at 1016. The Second Circuit reasoned that, "[a]s RICO was plainly intended to encompass the illegal activities of organized crime, [the court was] confident that the statute provided [the defendant] with fair notice that his contemplated conduct—bribery and money laundering on behalf of [a] . . . narcotics enterprise—fell within RICO's strictures, and thus the statute is not unconstitutionally vague as applied to him." *Id.* at 1017.

In *Thai v. United States*, No. 99 CV 7514(CBA), 2007 WL 13416 (E.D.N.Y. Jan. 2, 2007), a district court in the Eastern District of New York rejected the defendant's claim that RICO violates the First Amendment. *Id.* at *4 (denying habeas corpus petition). The *Thai* court explained:

> The Second Circuit has held that the constitutional safeguards of the First Amendment do not extend to an 'association' that commits criminal acts. *See, e.g., Jund v. Town of Hempstead,* 941 F.2d 1271, 1282-83 (2d Cir. 1991) (noting that "[i]t is elementary that criminal acts . . . may be punished" and holding that RICO liability for Hobbs Act violations does not interfere with rights of political committee members to free political association); *see also United States v. Int'l Bd. of Teamsters,* 941 F.2d 1292, 1297 (2d Cir. 1991) ("[A]n individual's right to freedom of association may be curtailed to further significant government interests.").

*Id.* In one of the cases cited by the *Thai* court—*Jund*—the Second Circuit ruled that imposing civil RICO liability on a political association as punishment for a solicitation scheme did not violate the First Amendment. 941 F.3d at 1282-83. The *Jund* court reasoned:

> The defendant Committees are not being punished for their advocacy or their political positions; they are being punished for a longstanding coercive solicitation scheme that the jury found ceased at least six years ago. Punishment for the execution of this scheme should have no effect on the legitimate First Amendment activities of the Committees.

*Id.* at 1283.

Contrary to Defendants' arguments, the allegations in the Indictment are more than sufficient to put Defendants on notice that their alleged conduct falls within the scope of the RICO conspiracy statute. The Government has "allege[d] . . . that the defendants agreed to the commission of multiple violations of a specific statutory provision that qualifies as RICO racketeering activity." *Applins*, 637 F.3d at 81. In this

case, Defendants allegedly agreed to conduct the affairs of the KMC through a pattern of racketeering activity consisting of murder, robbery, kidnapping, various drug offenses, obstruction of justice, witness tampering, Hobbs Act Robbery, and trafficking of contraband cigarettes. (Dkt. 33 at ¶ 28). The Indictment sets forth 87 overt acts in all. (*Id.* at 15-29). The Government alleges that the pattern of racketeering activity began in or before 2006 through the KMC enterprise, which had the objectives of, *inter alia*, generating and maximizing the profits, membership, and reputation of the KMC through a variety of illegal activity. (*Id.* at ¶¶ 27, 28).

To the extent Defendants' vagueness challenge arises out of the contention that the "enterprise" requirement is vague, that argument is foreclosed by *Coonan*, 938 F.2d at 1561. Further, as discussed above, *Applins* holds that an enterprise need not be alleged in the indictment; but even so, the Indictment in this case sufficiently alleges that KMC is an ongoing organization with a formal hierarchy whose purpose was to engage in a variety of illegal activity. (Dkt. 33 at ¶¶ 1-30).

To the extent that Defendants' vagueness challenge arises out of a purported lack of personal involvement in a predicate racketeering act, that argument is foreclosed by *Yannotti*, 541 F.3d at 121, which holds that personal involvement in a predicate act is unnecessary, so long as the defendant agreed to participate in the criminal scheme. Moreover, it is worth noting that "the challenge is premature at best, since an unconstitutional-as-applied challenge of this sort, if not frivolous on its face, can only be evaluated after the proof is in." *United States v. Giovannelli*, No. 01 CR. 749 (JSR), 2004 WL 48869, at *3 (S.D.N.Y. Jan. 9, 2004) (rejecting vagueness challenge on grounds

that it is foreclosed by Second Circuit precedent and is premature before any proof was presented).

The Court also finds unpersuasive Jenkins' argument that Count 1 is unconstitutionally vague because the Government is not required to prove an enterprise or any pattern of acts of racketeering. (Dkt. 522 at ¶¶ 25-33). As discussed, the allegations of the Indictment are consistent with *Applins*, which states that "[i]t is sufficient to allege . . . that the defendants agreed to the commission of multiple violations of a specific statutory provision that qualifies as RICO racketeering activity." 637 F.3d at 81. A reasonable person in Jenkins' position should understand that his alleged conduct—agreeing to engage in the violations of state and federal statutes related to drug trafficking, murder, robbery, obstruction of justice, trafficking cigarettes, and prostitution—would put him at risk.

Finally, Defendants' First Amendment arguments are undermined by the *Thai* and *Jund* cases cited above. The alleged criminal conduct in this case is the agreement to participate in the enterprise's racketeering activity, not speech or participation in meetings. For all the foregoing reasons, Defendants' challenges to Count 1 on the grounds of unconstitutional vagueness are denied.

## II.    Count 2 – § 924(c) charge related to Count 1

Count 2 charges all Defendants with possession of firearms in furtherance of a crime of violence (the RICO conspiracy charged in Count 1), in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. According to the Indictment, "[b]eginning in or before 2006, and continuing until on or about the date of the return of this Second Superseding

Indictment, the defendants, . . . in furtherance of a crime of violence . . . , that is, a violation of [RICO conspiracy, 18 U.S.C. §] 1962(d), committed in the manner set forth in Count 1 . . . , did knowingly and unlawfully possess firearms." (*Id.*).

### A. Legal Sufficiency of Count 2

Williams, Enix, and Jenkins move to dismiss Count 2 as facially deficient. Williams argues that Count 2 is merely a "guilty by association count" and should be dismissed for that reason. (Dkt. 400 at ¶ 2). He argues that his only connection to this count is that he is a KMC member. (*Id.* at ¶ 3). Enix argues that Count 2 fails to give him any notice of what he is alleged to have done to violate § 924(c). (Dkt. 392-7 at 12-13) Jenkins likewise moves to dismiss Count 2 as facially deficient and further argues that the count does not identify a crime of violence. (Dkt. 522 at ¶¶ 110-19).

The Court finds these arguments unpersuasive because Count 2 is facially valid under Rule 7(c). Count 2 tracks the statutory language of § 924(c)(1)(A)(i). (Dkt. 33 at 30). It also sets forth the essential elements of that crime. The two elements of firearms possession in furtherance of a crime of violence are (1) that the defendant actually or constructively possessed a firearm, and (2) that possession of the firearm was in furtherance of the predicate crime. *See United States v. Chavez*, 549 F.3d 119, 129-30 (2d Cir. 2008). By alleging that Defendants committed a predicate crime of violence (Count 1) and knowingly possessed firearms in furtherance of that crime, the Indictment sufficiently alleges the two essential elements of the crime of possession of firearms in furtherance of a crime of violence. *See id.* This is sufficient to fairly inform Defendants of the charges that they must defend. Further, contrary to Jenkins' argument, Count 2

does identify a crime of violence: the RICO conspiracy charged in Count 1.  (Dkt. 33 at 30).

### B.  Jenkins' and Pirk's Argument that Counts 2 and 46 are Duplicitous

Jenkins and Pirk move to dismiss Counts 2 and 46 as duplicitous.  As discussed, Count 2 charges Defendants with possession of firearms in furtherance of the RICO conspiracy crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and 2.  (Dkt. 33 at 30).  Count 46 charges Defendants with possession of firearms in furtherance of the drug trafficking crime charged in Count 45, in violation of 18 U.S.C. § 924(c)(1)(A)(i) and 2.  (*Id.* at 64).  Count 45 charges Defendants with use of a premises—the KMC South Buffalo Chapter clubhouse—for "purpose of manufacturing, distributing, and using cocaine, . . . and marijuana" in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2.  (*Id.* at 63).

Jenkins argues that Counts 2 and 46 are duplicitous because "there is no assurance that the grand jury voted unanimously regarding which firearm, or firearms, Mr. Jenkins allegedly possessed in Count 2 or Count 46, nor is there any assurance that the trial jury will agree unanimously as to which firearm is at issue in these counts."  (Dkt. 522 at ¶ 98).  According to Jenkins, Count 2 "is silent as to the crime of violence at issue, nor does it specify the firearms alleged to have been possessed. . . ."  (*Id.* at ¶ 95).  He argues that Count 46 "suffers from the same infirmity insofar as—without particularization—it potentially encompasses more than one firearms possession incident alleged in the indictment," and while it identifies Count 45 as the drug trafficking offense, "it alleges the possession by the defendants of 'firearms' without further specificity in furtherance of

- 24 -

the drug offense." (*Id.* at ¶ 96). Pirk seeks dismissal of Counts 2 and 46 for the same reasons, that is, that these counts encompass potentially more than one firearms possession. (Dkt. 434 at 10-12 ("[T]here is no assurance that the grand jury indictment for count 2 was unanimous regarding which firearm he possessed, nor is there any assurance that the petit jury will agree unanimously as to which firearm is at issue in Count 2. Thus, Count 2 is duplicitous against Mr. Pirk. . . . Count 46 also suffers from the same infirmity insofar as—without particularization—it potentially encompasses more than one firearms possession incident alleged in the indictment.").

"An indictment is duplicitous if it joins two or more distinct crimes in a single count." *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir. 1992). "A duplicitous indictment, which alleges several offenses in the same count, must be distinguished from the allegation in a single count of the commission of a crime by several means. The latter is not duplicitous." *Id.* (citation and quotation omitted). "Duplicity, of course, is only a pleading rule and would in no event be fatal to the count." *United States v. Droms*, 566 F.2d 361, 363 n.1 (2d Cir. 1977); *accord United States v. Sturdivant*, 244 F.3d 71, 79 (2d Cir. 2001) (explaining that duplicity does not require dismissal of an indictment, but rather various other remedies are available to address duplicity, including appropriate jury instructions that ensures jury unanimity regarding the underlying conduct); *United States v. Abakporo*, 959 F. Supp. 2d 382, 391 (S.D.N.Y. 2013) ("[B]ecause duplicity is a pleading rule, a duplicitous count is not fatal where the charges can be reformulated.").

> In deciding whether an indictment includes a duplicitous count, the criminal statute alleged to have been violated must be examined. The court's determination turns on whether the statute creates several distinct

offenses or merely describes different means by which a single crime may be committed. If the statute at issue creates separate offenses, a count charging multiple offenses will be considered duplicitous. However, the Second Circuit has held that where there are several ways to violate a criminal statute, a charge alleging two distinct ways to violate a statute, is not only permissible but required.

*United States v. Ahmed*, 94 F. Supp. 3d 394, 432 (E.D.N.Y.), *reconsideration denied*, No. 12-CR-661 SLT S-2, 2015 WL 1636827 (E.D.N.Y. Apr. 10, 2015).

Count 2 as alleged is not duplicitous. First, contrary to Jenkins' characterization, Count 2 does identify the predicate crime of violence: the RICO conspiracy charged in Count 1. (Dkt. 33 at 30). Second, Count 2 does not "allege[] several offenses in the same count." *Aracri*, 968 F.3d at 1518. Rather, only the crime of firearms possession in furtherance of a crime of violence is alleged in that count. (Dkt. 33 at 30). Even though there are multiple firearms alleged to have been possessed in furtherance of the RICO conspiracy in Count 2, (*id.*), this does not render Count 2 impermissibly duplicitous because the Government need not prove the identity of any particular firearm in order to prove a violation of 18 U.S.C. § 924(c). *See United States v. Patino*, 962 F.2d 263, 266 (2d Cir. 1992) ("[C]ourts have rejected claims that the type of firearm alleged in the indictment is an essential element under Section 924(c)(1) and have affirmed convictions where the evidence showed a different type of weapon."). In other words, the fact that the Government has alleged the possession of multiple firearms does not mean that the jury will have multiple crimes to consider in Count 2.

Nor is Count 46 duplicitous as alleged, for similar reasons. That count does not impermissibly combine several offenses into the same count; rather, only the crime of

firearms possession in furtherance of a drug trafficking offense (Count 45, charging use and maintenance of premises for drug dealing) is alleged in that count. *See Aracri*, 968 F.3d at 1518. Once again, the fact that there are multiple firearms alleged in Count 46 does not render it duplicitous. *See Patino*, 962 F.2d at 266.

Finally, any concerns related to jury unanimity can be addressed at trial by, for instance, appropriate jury instructions.

### C. Caruso's Argument that Counts 2, 36, 38, and 40 are Duplicitous

Caruso argues that Counts 2, 36, 38, and 40 are duplicitous because "Count 2 charges Caruso with possessing a firearm of an unspecified nature in furtherance of a crime of violence at an unspecified time and place from 2006 until March 22, 2016," while "Counts 36, 38 and 40 charge Caruso with possessing a firearm during a period of 2008-2015 at the KMC clubhouses on the west side and North Tonawanda and the possession of firearms in furtherance of drug trafficking generally." (Dkt. 467 at ¶ 17).

Again, Count 2 charges Defendants with possession of firearms in furtherance of a crime of violence, that is, the RICO conspiracy charged in Count 1. (Dkt. 33 at 30). Count 36 charges Caruso with possession of firearms in furtherance of drug trafficking crimes, that is, distribution of cocaine as charged in Count 34, and distribution of marijuana as charged in Count 35. (*Id.* at 58). Count 38 charges Caruso with possession of firearms in furtherance of a drug trafficking crime, that is, the use and maintenance of the KMC West Side Chapter clubhouse as premises for drug dealing as charged in Count 37. (*Id.*). Count 40 charges Caruso with possession of firearms in furtherance of a drug

trafficking crime, that is, the use and maintenance of the KMC North Tonawanda Chapter clubhouse as a premises for drug dealing as charged in Count 39. (*Id.* at 60).

Counts 2, 36, 38, and 40 are not duplicitous, as alleged, because none of them impermissibly combines several offenses into the same count. Rather, each count alleges only the count of possession of firearms in furtherance of various predicate crimes. Therefore, the motion to dismiss Counts 2, 36, 38, and 40 as duplicitous is denied.[6]

### D. Jenkins' and Pirk's Arguments that Counts 2, 21 and 22 are Multiplicitous

Jenkins argues that Counts 2, 21, and 22 are multiplicitous because "Count 2, without additional particularization, is identical to Counts 21 and 22 insofar as they encompass the possession of a firearm in relation to a crime of violence, namely, the murders alleged in Counts 19 and 20." (Dkt. 522 at ¶ 107). Pirk raises similar arguments with respect to those counts. (Dkt. 434 at 10-12 ("[D]ue to the failure to particularize Count 2, this count is multiplicitous when applied to Mr. Pirk.")).

"An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999). Punishment for a multiplicitous indictment "violates the Double Jeopardy clause of the Fifth Amendment, subjecting a person to punishment for the same crime more than once." *Id.* However, "[w]here there has been no prior conviction or acquittal, the Double Jeopardy Clause does not protect against simultaneous prosecutions for the same offense, so long

---

[6]    Again, any concerns regarding duplicity with respect to these counts can be appropriately addressed at trial, such as through jury instructions.

as no more than one punishment is eventually imposed." *United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006).  Of course, even prior to conviction, a trial court must be cognizant of its discretionary ability to protect against improper prejudice before a jury, and may, in an appropriate case, require the prosecution to elect among multiplicitous counts. *United States v. Reed*, 639 F.2d 896, 904 n.6 (2d Cir. 1981).

"It is not determinative whether the same conduct underlies the counts; rather, it is critical whether the 'offense'—in the legal sense, as defined by Congress—complained of in one count is the same as that charged in another." *Chacko*, 169 F.3d at 146.  When the same statutory violation is charged multiple times, as is the case with Counts 2, 21, and 22, "the question is whether the facts underlying each count were intended by Congress to constitute separate 'units' of prosecution." *United States v. Ansaldi*, 372 F.3d 118, 124 (2d Cir. 2004) (quoting *Bell v. United States*, 349 U.S. 81, 83-84 (1955)).

According to the Second Circuit, the appropriate unit of prosecution under § 924(c) is the underlying predicate offense rather than the number of firearms. *United States v. Lindsay*, 985 F.2d 666, 674 (2d Cir. 1993).  "Only where the defendant commits multiple . . . violent crimes, and the government can link the firearms to those crimes, may the government prosecute for multiple violations of § 924(c)(1)." *Id.* (internal citations omitted).  On the other hand, "[w]here the government links multiple firearms to a single crime, only one § 924(c)(1) violation occurs." *Id.*

Here, Count 2 on its face is a different unit of prosecution (RICO conspiracy) than the murders charged in Counts 21 and 22.  Thus, at least at this stage of the proceedings, Count 2 supports its own § 924(c) charge, and it would be inappropriate to dismiss Count

2. *See United States v. Arline*, 835 F.3d 277, 281-83 (2d Cir. 2016) (under plain error standard of review, finding that where racketeering counts included predicate acts involving narcotics distribution, and where Government distinguished between firearms involved in respective § 924(c) counts, convictions under § 924(c) would stand based on both the racketeering and narcotics conspiracy that covered, in part, the same time period); *Mejia*, 545 F.3d at 204-05 (rejecting argument that firearms used in furtherance of the same conspiracy could not serve as basis for three separate counts based on § 924(c)—"the existence of a single conspiracy connecting the three assaults does not preclude treating them as separate predicate offenses"); *United States v. McCoy*, 14-CR-6181W, 2016 WL 5335443, at *3 (W.D.N.Y. Sept. 21, 2016), *report and recommendation adopted by*, 2016 WL 6952351 (W.D.N.Y. Nov. 28, 2016) (denying motion to dismiss as multiplicitous § 924(c) counts based on conspiracy and substantive counts).

In the Court's view, Counts 21 and 22 present a closer question, but at this stage dismissal would be premature as the counts do not charge § 924(c) violations that are clearly based upon "co-terminous predicate offenses involving essentially the same conduct." *McCoy*, 2016 WL 5335443, at *3 (*quoting United States v. Barnes*, 560 F. App'x 36, 43 (2d Cir. 2014)). This conclusion is reinforced by the Second Circuit's decision in *Mejia*, where the court considered whether an indictment alleging three § 924(c) counts based on three underlying shootings was multiplicitous. 545 F.3d at 204. It summarized two decisions in which it found that multiple predicate offenses gave rise to only a single § 924(c) offense:

- 30 -

In the first, *United States v. Finley*, 245 F.3d 199 (2d Cir. 2001), the defendant had been convicted of two § 924(c)(1) counts. *Id.* at 201. The predicate crimes were (1) drug possession and (2) drug distribution. *Id.* Both predicate crimes stemmed from a single transaction in which Finley had (1) possessed multiple packets of cocaine and (2) sold two of those packets to an undercover officer. *Id.* at 201-02. We reversed Finley's second § 924(c)(1) conviction, *id.* at 208, finding that "[t]he statute does not clearly manifest an intention to punish a defendant twice for continuous possession of a firearm in furtherance of simultaneous predicate offenses consisting of virtually the same conduct." *Id.* at 207.

We reached a similar conclusion in *United States v. Wallace*, 447 F.3d 184, where two defendants had each been convicted of two § 924(c)(1) counts in connection with a narcotics-related drive-by shooting. *Id.* at 185-86. The § 924(c)(1) offenses were based on two separate predicate crimes: (1) conspiracy to traffic in narcotics, and (2) firing of a weapon into a crowd of two or more persons in furtherance of a major drug offense (i.e., the conspiracy). *Id.* at 187. Despite the existence of two separate predicate crimes, we found that "[t]he relevant conduct underlying the offenses predicating Counts Thirteen and Fourteen consists of the same shooting." *Id.* at 189. Both offenses involved one defendant's use of a firearm in connection with a drug offense, and both involved the murder of a single victim during the drive-by shooting. *Id.*

*Id.* at 204-05. It also summarized a third decision reaching a different conclusion, that

two § 924(c) convictions were not multiplicitous:

We distinguished *Finley* in *United States v. Salameh*, 261 F.3d 271 (2d Cir. 2001), where the defendants had each been convicted of multiple crimes in connection with the 1993 bombing of the World Trade Center. *Id.* at 274. The defendants had each been convicted of two § 924(c)(1) counts. *Id.* at 275. One count had been based on the predicate crime of conspiracy, and the other count had been based on the predicate crime of assaulting Secret Service officers during the bombing. *Id.* The defendants there relied on Finley to argue that their two § 924(c)(1) convictions were duplicative. *Id.* at 277. We found, however, that while the two § 924(c)(1) convictions in *Finley* were based on a single use of a single firearm, the two § 924(c)(1) counts in *Salameh* were based on two separate uses of the bomb: transportation and detonation. *Id.* at 279.

- 31 -

*Id.* at 205. The *Mejia* court concluded that there were no multiplicity issues in that case where the appellants were "convicted of three counts of the same criminal violation, assault, but the assaults were based on two separate drive-by shootings that resulted in the shooting of three separate victims." *Id.* Moreover, "the jury found both [a]ppellants culpable of the shooting of three separate individuals," even though the appellants described the shootings as "a single incident." *Id.* Mere clustering of the shootings in time and space "does not somehow merge them into one predicate crime." *Id.* at 206.

Counts 21 and 22 each charge violations of §§ 924(c)(1)(A)(iii) and 924(j), that is, discharge of a firearm causing death based upon the murders of two different people on September 6, 2014. Those two murders allegedly occurred at the same time and date, at the same location, but involved two separate victims. The fact that there were two separate victims makes this case closer to *Mejia* than *Finley*; moreover, the fact that the murders were close in time does not necessarily merge them into one predicate offense. *See Mejia*, 545 F.3d at 205-06. Thus, the Court concludes, at least at this stage of the proceedings, it would be premature to dismiss the counts as multiplicitous on their face because the counts charge distinct units of prosecution: the murder of Paul Maue, and the murder of Daniel "DJ" Szymanski.

### E. Caruso's Argument that Counts 2, 36, 38, and 40 are Multiplicitous

Caruso moves to dismiss Counts 2, 36, 38, and 40—all various § 924(c) counts— as multiplicitous. (Dkt. 467 at ¶¶ 17-19). As referenced above, Count 2 is predicated on the RICO conspiracy charged in Count 1. Count 36 is predicated on marijuana and cocaine distribution offenses charged in Counts 34 and 35, while Counts 38 and 40 are

each predicated on the use and maintenance for drug trafficking of different KMC Chapter clubhouses, during different time spans (in or before 2010 until 2014, and in or before 2008 until 2014, respectively).

For the same reasons discussed above in connection with Jenkins' challenge to Counts 2, 20 and 21 as multiplicitous, the Court finds that any multiplicity challenge is premature at this juncture.

**III.    McIndoo's Motion to Dismiss Counts 2, 14, 15, and 16**

In his reply papers, McIndoo states that his motion to dismiss Counts 2 and 14 through 16 is "predicated on the viability of Count 1." (Dkt. 520 at 8). Having denied the motions to dismiss Count 1 as set forth above, the Court also denies McIndoo's motion to dismiss Counts 2 and 14 through 16.

**IV.    Motion to Dismiss Counts 21 and 22 as Duplicitous**

Pirk and Jenkins move to dismiss Counts 21 and 22 as duplicitous. Count 21 charges Pirk and Jenkins with, on September 6, 2014, possession and discharge of a firearm in furtherance of a crime of violence, that is, the alleged murder of Paul Maue in aid of racketeering charged in Count 19. (Dkt. 33 at 42-44). Count 22 charges Pirk and Jenkins with, on September 6, 2014, possession and discharge of a firearm in furtherance of a crime of violence, that is, the alleged murder of Daniel "DJ" Szymanski in aid of racketeering charged in Count 20. (*Id.* at 43-45).

Jenkins argues that Counts 21 and 22 are duplicitous because "[t]he plain language of § 924(c)(1) alleges two separate and distinct crimes – (1) using or carrying a firearm during and in relation to a crime of violence; and, (2) possession of a firearm in

- 33 -

furtherance of a crime of violence." (Dkt. 522 at ¶ 102). He argues that, "[i]nasmuch as Mr. Jenkins is substantively charged with commission of these murders, in Counts 19 and 20, we know that he is alleged to have used the firearms in relation to a crime of violence as opposed to possessing a firearm in furtherance." (*Id.* at ¶ 104). Pirk likewise seeks dismissal of these counts as duplicitous. (*See* Dkt. 434 at 10-12).

According to the Second Circuit, "[c]ircuits are currently split as to whether § 924(c) creates two separate offenses or whether it merely describes two alternative means for committing the same offense." *United States v. Jackson*, 513 F. App'x 51, 54 (2d Cir. 2013) (citations omitted). In *Jackson*, the defendant had argued, like Jenkins does here, that the statute creates two separate offenses: "a 'uses or carries' offense and a 'possession' offense." *Id.* at 53. The Sixth and Eighth Circuits have held that § 924(c) creates two separate offenses. *United States v. Gamboa*, 439 F.3d 796, 809-10 (8th Cir. 2006); *United States v. Combs*, 369 F.3d 925, 933 (6th Cir. 2004).[7] The Seventh and Ninth Circuits have held that the statute merely describes two alternative means for committing the same offense. *See United States v. Haynes*, 582 F.3d 686, 703-04 (7th Cir.), *opinion amended on denial of reh'g*, 353 F. App'x. 58 (7th Cir. 2009), *and abrogated on other grounds by United States v. Vizcarra*, 668 F.3d 516 (7th Cir. 2012); *United States v. Arreola*, 467 F.3d 1153 (9th Cir. 2006). In *Jackson*, the Second Circuit

---

[7]     The Fifth, Tenth and Eleventh circuits have apparently also read § 924(c) as defining two separate crimes, although the decisions from those circuits do not appear to provide any in-depth analysis of the issue. *See United States v. Owens*, 224 Fed. Appx. 429, 430 (5th Cir. 2007); *United States v. Lott*, 310 F.3d 1231, 1246 (10th Cir. 2002); *United States v. Timmons*, 283 F.3d 1246, 1250 (11th Cir. 2002) .

declined to resolve that question because "it [wa]s clear on the record before [the Circuit] that the defendant suffered no prejudice." 513 F. App'x at 54.

At least one court from this district has held that a § 924(c) count is not duplicitous, but rather provides different means of committing a violation of that statute. *See United States v. Montalvo*, No. 11-CR-00366-RJA-JJM, 2014 WL 3894377, at *4-5 (W.D.N.Y. Apr. 16, 2014), *report and recommendation adopted*, No. 11-CR-366-A, 2014 WL 3894383 (W.D.N.Y. Aug. 8, 2014). The *Montalvo* court noted that the question of whether § 924(c) creates two offenses is an open one in this Circuit, but several district courts have found the reasoning of the Seventh and Ninth Circuits more persuasive. *Id.* at *4 (citing *Jackson*, 513 F. App'x at 54); *Johnson v. United States*, No. 09 CIV. 5554 PAE, 2013 WL 103174, at *6 & n.11 (S.D.N.Y. Jan. 9, 2013) (concluding that "using, carrying, and brandishing a firearm are merely three means of committing a violation of 18 U.S.C. § 924(c), and, therefore, . . . the indictment is not duplicitous" and citing cases holding same), *aff'd*, 779 F.3d 125 (2d Cir. 2015); *United States v. Barret*, No. 10-CR-809 (S-3) KAM, 2011 WL 6780901, at *3 (E.D.N.Y. Nov. 27, 2011) (concluding that indictment was not duplicitous because § 924(c) count "alleges that each of the named defendants committed one crime (i.e., use of a firearm in relation to drug trafficking) by several means (i.e., using, carrying or possessing; brandishing; or discharging)"). The *Montalvo* count also noted that "[t]he Second Circuit has also suggested that it would reach a similar conclusion." 2014 WL 3894377 at * 5 (citing *Jackson*, 513 F. App'x at 54 ("Although we do not reach the question of whether section 924(c) creates multiple offenses, we have held that '[w]here there are several ways to

- 35 -

violate a criminal statute . . . federal pleading requires . . . that an indictment charge [be] in the conjunctive to inform the accused fully of the charges. A conviction under such an indictment will be sustained if the evidence indicates that the statute was violated in any of the ways charged.'" (quoting *Mejia*, 545 F.3d at 207))).

The *Montalvo* court denied the motion to dismiss a § 924(c) count as duplicitous on these grounds; and because duplicity is only a pleading rule. *Id.* A similar result is warranted here. Accordingly, the Court denies the motions to dismiss Counts 21 and 22 as duplicitous.

**V.    Counts 19 and 20**

Jenkins also moves to dismiss as vague and facially insufficient Counts 19 and 20 charging the murder of Paul Maue in aid of racketeering (Count 19) and the murder of Daniel "DJ" Szymanski in aid of racketeering (Count 20). (Dkt. 522 at ¶¶ 120-22).

The Court rejects this argument. Each of those counts "sufficiently inform[s] the defendant of the charges against him and provide[s] enough detail so that he may plead double jeopardy in a future prosecution based on the same set of events." *United States v. Vickers*, No. 13-CR-128-A, 2014 WL 1838255, at *5 (W.D.N.Y. May 8, 2014). The counts track the statutory language and specify the nature of the criminal activity. *Id.* Because Counts 19 and 20 contain statements of the essential factors of the charged offenses of murder in aid of racketeering, (*see* Dkt. 33 at 42-43), this motion is denied.

**VI.    Counts 45 and 46**

McIndoo, Scanlon, Enix, Williams, Pirk, Caruso, and Jenkins move to dismiss counts 45 and/or 46 as facially deficient. (Dkt 383 at ¶ 24 (McIndoo); Dkt. 385 at 45

(Scanlon); Dkt. 392-7 at 11 (Enix); Dkt. 400 at ¶¶ 6-13 (Williams); Dkt. 434 at 10-12 (Pirk); Dkt. 467 at ¶¶ 1-16 (Caruso); Dkt. 522 at ¶¶ 110-19 (Jenkins)).    In the main, Defendants argue that these counts are too vague to apprise them the essential facts of the allegations against them.

For example, according to Enix, Count 45 "simply parrots the statute" without apprising him of "when he supposedly 'used' or 'maintained' the house, whether he permanently or temporarily maintained it, or whether he did so for the purpose of use, manufacture, or distribution of controlled substances."    (Dkt. 392-7 at 13).    Jenkins argues that Count 46 merely restates the language of the charging statute and fails to allege specific details as to when he "possessed firearms, what type of firearms, and how he may have done so in furtherance of the drug trafficking crime."    (Dkt. 522 at ¶¶ 115-17).    Similarly, Williams and McIndoo argue that Counts 45 and 46 are both "guilty by association" counts, and as a result, they do not state a valid theory of criminal liability. (Dkt. 383 at ¶ 24 (McIndoo); Dkt. 400 at ¶¶ 6, 10 (Williams)).

Defendants' arguments concerning dismissal are unpersuasive.    Counts 45 and 46 track the statutory language of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 924(c)(1)(A)(i), respectively.    (Dkt. 33 at 63-64).    Moreover, the factual matters that, according to Defendants, are absent from Counts 45 and 46 are either already alleged, or are not matters that must be alleged in an Indictment.    For example, the charge of use and maintenance of premises for drug dealing (Count 45) requires that the defendant (1) knowingly (2) used or maintained a place, whether permanently or temporarily, (3) for the purpose of manufacturing, distributing, or using any controlled substance.    21

U.S.C. § 856(a)(1). The charge does not need to specifically identify whether it was permanent or temporary use. In this case, Count 45 specifies the premises and the time span (a 10-year time period running throughout the same time as the RICO conspiracy), and identifies the purposes as the manufacture, distribution, and use of cocaine and marijuana. (Dkt. 33 at 63).

With respect to Count 46, the elements are (1) that the defendant actually or constructively possessed a firearm; and (2) that possession of the firearm was in furtherance of the predicate crime. *Chavez*, 549 F.3d at 129-30. The identity of a firearm is not an element. *See Patino*, 962 F.2d at 266 ("[C]ourts have rejected claims that the type of firearm alleged in the indictment is an essential element under Section 924(c)(1) and have affirmed convictions where the evidence showed a different type of weapon.").

Accordingly, Defendants' motions to dismiss Counts 45 and 46 are denied. [8]

## MOTIONS FOR BILLS OF PARTICULARS

Pursuant to Fed. R. Crim. P. 7(f), a defendant may seek a bill of particulars "in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea

---

[8] Scanlon, argues, without elaboration, that Counts 41 and 42 must be dismissed because they "contain the same flaws as Counts 45 and 46." (Dkt. 385 at 45). Count 41 charges Scanlon and Osborne with use and maintenance of the KMC Olean Chapter clubhouse as premises for the purposes of manufacturing, distributing, and using marijuana and cocaine, in violation of 21 U.S.C. § 856(a)(1). (Dkt. 33 at 61). Count 42 charges those two Defendants with possession of firearms in furtherance of a drug trafficking crime, that is, the use and maintenance of premises for drug dealing charged in Count 41. (*Id.*). For the same reasons that Counts 45 and 46 are not deficient, Counts 41 and 42 are not deficient. Those counts track the statutory language of the charging statutes and set forth the essential elements of those crimes. Accordingly, Scanlon's motion to dismiss Counts 41 and 42 is denied.

of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). A bill of particulars amplifies the pleading (i.e. the indictment), and therefore, "the Government will be strictly limited to proving what it has set forth in it." *United States v. Germain*, 33 F. App'x 565, 566 (2d Cir. 2002) (quoting *United States v. Glaze*, 313 F.2d 757, 759 (2d Cir. 1963)). As a result, a bill of particulars should not be substituted for a form of discovery—it "should not function to disclose evidence, witnesses, and legal theories to be offered by the Government at trial or as a general investigative tool for the defense." *United States v. Henry*, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994). As explained by the Second Circuit:

> [w]hile a bill of particulars is not intended, as such, as a means of learning the government's evidence and theories, if necessary to give the defendant enough information about the charge to prepare his defense, it will be required even if the effect is disclosure of evidence or of theories. A district court judge . . . has the discretion to deny a bill of particulars if the information sought by defendant is provided in the indictment or in some acceptable alternate form.

*United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998) (internal quotation marks and citations omitted).

"The allegations in this case present an additional consideration: the principles governing a bill of particulars 'must be applied with some care when the Government charges criminal offenses under statutes as broad as RICO.'" *United States v. Nance*, 168 F. Supp. 3d 541, 547 (W.D.N.Y. 2016) (quoting *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988)).

> With the wide latitude accorded the prosecution to frame a charge that a defendant has "conspired" to promote the affairs of an "enterprise" through a "pattern of racketeering activity" comes an obligation to particularize the

nature of the charge to a degree that might not be necessary in the prosecution of crimes of more limited scope.

*Davidoff*, 845 F.2d at 1154. However, this does not mean "that even in a RICO case the prosecution must always disclose in advance of trial every act it will prove that may violate some criminal statute." *Id.* "The granting of a bill of particulars rests within the sound discretion of the district court." *United States v. Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995).

## I.    Count 1

Defendants seek details relating to the RICO conspiracy charged in Count 1 of the Indictment. (Dkt. 378 at ¶ 21 (Stacharczyck requesting particularization of Count 1); Dkt. 382 at ¶ 9 (Wood requesting particularization of Count 1); Dkt. 383 at 1 (McIndoo requesting particulars of "the 'specific acts' of which he is accused . . . and the precise date, time, and place of those acts"); Dkt. 385 at 26 (Scanlon requesting particularization of Count 1); Dkt. 394 at 4-6 (Olejniczak requesting particularization of Count 1); Dkt. 400 at ¶¶ 18-31 (Wood requesting particularization of Count 1); Dkt. 434 at 13-14 (Pirk requesting particularization of Count 1); Dkt. 467 at ¶ 23 (Caruso requesting particularization of Count 1); Dkt. 522 at ¶ 159 (Jenkins requesting particularization of Count 1)).

For example, Pirk requests the following details concerning Count 1:

a.  Whether the RICO conspiracy that Mr. Pirk is alleged to have joined consists of the enterprise under his control as National President or the enterprise that existed prior to his assuming the role of president;

b.  If the RICO is alleged to have been prior to assumption of president, his role and specific conduct in the criminal enterprise;

   c.  The exact date he allegedly joined the conspiracy;

   d.  The criminal purpose of the enterprise that he conspired to join;

   e.  Other than Mr. Pirk's titular role as president of KMC, the nature of Mr. Pirk's involvement in overt acts allegedly committed by other participants or alleged co-conspirators;

   [f].  The names, if known, of all persons present when the overt acts and substantive acts in Count 1 allegedly took place;

   [g].  Whether the government alleges that Mr. Pirk participated in any overt acts other than those identified in the indictment.

(Dkt. 434 at 13-14). Caruso makes similar requests with respect to Count 1. (Dkt. 467 at

¶ 23). Wood requests:

   (a)  The names and addresses of all co-conspirators and those individuals referred to as others known and unknown who are presently known to the government.

   (b)  The specific times, dates and locations when and where Mr. Wood and other co-conspirators combine and agree to possess with intent to distribute, any of the controlled substances alleged in the Indictment.

   (c)  The location of "elsewhere" where co-conspirators allegedly conspired.

   (d)  Any and all uncharged overt acts taken by the co-conspirators, including Mr. Wood.

   (e)  The exact weight of all controlled substances that Mr. Wood allegedly conspired to possess with intent to distribute and the dates on which they conspired to possess each amount of controlled substances.

   (f)  Whether any individual involved in the commission of any of the alleged overt acts was acting on behalf of the government and the names of any such persons.

   (g)  The dates, to the extent know[n], when each defendant joined the conspiracy and the dates on which the conspiracy ended, including the dates when each defendant left the conspiracy.

(h) The quantity of controlled substances distributed and possessed by each defendant and each co-conspirator during the course of the alleged conspiracy to the extent that this information will be presented by the government at trial.

(Dkt. 382 at ¶ 9). Jenkins requests:

a. A list of all unindicted co-conspirators, regardless of whether the government intends to call any co-conspirator as a witness at trial;

b. The specific times, dates and locations where Mr. Jenkins or other co-conspirators committed the crimes as set forth in the indictment;

c. The exact date Mr. Jenkins allegedly joined the conspiracy;

d. The criminal purpose of the enterprise that he conspired to join;

e. The names of all known persons present when the overt acts and substantive acts in Count 1 allegedly took place;

f. Whether the government alleges that Mr. Jenkins participated in any overt acts other than those identified in the indictment;

g. State with particularity whether the government claims there are any further co-conspirators whose identities are not known to the government;

h. With respect to any overt acts provide the date time and place and participants of any overt acts which were not set forth in the indictment;

i. State with particularity which acts in furtherance of the conspiracy were committed outside of the Western District of New York.

(Dkt. 522 at ¶ 159).

For the reasons discussed below, the Court denies Defendants' requests for particularization of Count 1.

- 42 -

First, the Government represents that Defendants have received voluminous discovery that obviates the need for particulars.  For example, in opposition to the request for a bill of particulars by Wood, the Government represents that:

> [D]efendants were provided itemized and searchable discovery consisting of photos of items and documents obtained as the result of search warrants and consent searches conducted at eight (8) Kingsmen Motorcycle Club (KMC) clubhouses, phone records, FBI phone record analysis, historical cell site mapping, photos and documents (including forensic reports) generated in connection with the homicide investigation into the deaths of Paul Maue and Daniel Szymanski, video surveillance footage (including from the North Tonawanda clubhouse, Betty's Bar, and the NYS Thruway), Grand Jury transcripts, interview and arrest FBI 302s, Facebook records, pen register data, KMC meeting minutes, KMC by-laws, jail recordings, search warrant results for numerous electronic devices, and documents generated in connection with the search and arrest of various defendants.

(Dkt. 450 at 7).   The Government alleges that Defendants have "likely obtained transcripts of trial testimony relating to the state trial of Andre Jenkins, which provide further insight to the KMC and overlap with some of the charges contained in the Second Superseding Indictment." (*Id.*).  The Government further states that:

> [D]uring the course of multiple lengthy detention hearings, the government made extensive detailed proffers (the transcripts of which, upon information and belief, have all been ordered and obtained by the defendants), and filed detailed pleadings with attached exhibits, which outline the strength and nature of the evidence against the members of the KMC. . . .

(*Id.* (citing transcripts and Government filings in opposition to defense motions for release from custody)).  In light of these pretrial disclosures, the need for particularization of Count 1 is diminished.  *See United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) ("[A] bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means."); *United States v.*

*Muyet*, 945 F. Supp. 586, 599 (S.D.N.Y. 1996) ("If the information sought by the defendant is provided by the indictment or by some other pretrial disclosure, such as discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure, a bill of particulars is not required.").

Second, the 72-page Indictment in this case is sufficiently specific regarding the RICO conspiracy. (*See* Dkt. 33). In *Nance*, the district court declined to order "a lengthy and detailed itemization of the Government's anticipated evidence" that the defendant requested with respect a RICO conspiracy.[9]  168 F. Supp. 3d at 547.  The *Nance* court reasoned that "the twenty-six-page superseding indictment in this case provide[s] sufficient detail regarding the racketeering conspiracy, the purpose and goals of the enterprise, and the specific overt acts alleged," and that detail, "combined with the Government's Rule 16 discovery . . . provides adequate notice of the Government's allegations concerning the alleged RICO conspiracy." *Id.* (quotations omitted).  Similar reasoning applies in this case.  With respect to Count 1, the detailed allegations in the Indictment provide:

> (1) the names and aliases of the defendant members of the RICO enterprise and conspiracy; (2) the name of the enterprise; (3) a brief description of the purposes, means and methods of the RICO enterprise; (4) the area in which the enterprise operated; and (5) the approximate duration of the enterprise.

---

[9]    The *Nance* court did, however, order particularization of the "date [the defendant] is alleged to have first agreed with others to conduct the affairs of the alleged enterprise," because the magistrate judge had ordered identical particularization with respect to a co-defendant, and the Government did not specifically respond to the argument.  168 F. Supp. 3d at 548.

*Muyet*, 945 F. Supp. at 599 (denying bill of particulars with respect to RICO conspiracy count where indictment provided those five pieces of information). The Indictment also lists 87 overt acts in furtherance of the conspiracy. *See United States v. Contreras*, 216 F. Supp. 3d 299, 302 n.1 (W.D.N.Y. 2016) ("[O]vert act allegations in a RICO conspiracy may lessen the need to order a bill of particulars.").

Third, Defendants seek information that is not the proper subject of a bill of particulars and they have not established the need for the particularization that they seek. *See Montalvo*, 2014 WL 3894377, at *11 ("[M]uch of what defendants seek, including how the co-defendants knowingly, willfully and unlawfully combined, conspired, and agreed together to commit the acts set forth in the Indictment, a list of the uncharged overt acts taken, whether persons acting for the government were present during the overt acts, the dates the defendants joined and withdrew from the alleged conspiracy, the name of all individuals from whom the government alleges Defendant distributed cocaine, the exact quantity of controlled substances alleged to be in possession of Defendant during the alleged conspiracy, and the exact number of times Defendant distributed controlled substances during the alleged conspiracy, are not the proper subject of a bill of particulars." (quotations, citations, and alterations omitted)). For example, "when a conspiracy is charged, the government need not disclose the dates defendants are alleged to have joined the conspiracy, other known and unknown coconspirators, precise dates and locations when and where defendants assisted the conspiracy, and the means by which defendants furthered the conspiracy." *United States v. Vasconcellos*, 658 F. Supp. 2d 366, 375 (N.D.N.Y. 2009) (citing *United States v. Cephas*, 937 F.2d 816, 823 (2d Cir.

1991)); *see also Muyet*, 945 F. Supp. at 599 ("The defendants are not entitled to a bill of particulars setting forth the 'whens,' 'wheres,' and 'with whoms' regarding the Nasty Boys enterprise and conspiracy."); *United States v. Busch*, No. 09CR331A, 2013 WL 3759944, at *6 (W.D.N.Y. July 15, 2013) ("defendants have not established that such disclosure [of the names of all unindicted co-conspirators] is necessary prior to the disclosure of such information along with other Jencks material.").

Based on the foregoing circumstances, particularization of Count 1 is not necessary, and Defendants' motions for a bill of particulars with respect to that count are denied.

II.    **Section 924(c) Counts (Counts 2, 21, 22, 36, 38, 40, 42, and 46)**

Defendants request particularization of the various § 924(c) counts within the Indictment. (*See* Dkt. 383 at 1 (McIndoo requesting particulars of "the 'specific acts' of which he is accused . . . and the precise date, time, and place of those acts"); Dkt. 385 at 23 (Scanlon requesting particularization of Counts 42 and 46); Dkt. 387 at ¶ 14 (Osborne requesting particularization of Counts 2, 42, and 46); Dkt. 392-7 at 16-18 (Enix requesting particularization of Counts 2 and 46); Dkt. 434 at ¶¶ 46, 48 (Pirk requesting particularization of Counts 2 and 46); Dkt. 467 at ¶¶ 24, 27, 29, 31, 33 (Caruso requesting particularization of Counts 2, 36, 38, 40, and 46); Dkt. 522 at ¶ 159 (Jenkins requesting particularization of Counts 2, 21, 22, and 46)).

For example, Enix, Pirk, Jenkins, and Caruso request that the Government identify the following with respect to Count 2:

a. The specific acts constituting a crime of violence that [Defendant] allegedly committed and furthered by (and while) knowingly possessing a firearm in furtherance of that crime;

b. The make, model, caliber, and serial number of the firearm [Defendant] allegedly used in furtherance of his crime of violence;

c. The specific date of the alleged acts by [Defendant] constituting a crime of violence while knowingly possessing a firearm during the alleged crime of violence; and

d. The specific location of the alleged crime of violence by [Defendant] and alleged knowing possession of a firearm in furtherance of that crime of violence.

(Dkt. 392-7 at 16-17 (Enix); *see also* Dkt. 434 at ¶ 46 (Pirk); Dkt. 467 at ¶ 24 (Caruso); Dkt. 522 at ¶ 159 (Jenkins)). Osborne and McIndoo request similar information. (Dkt. 387 at ¶ 14 (Osborne); Dkt. 383 at 1 (McIndoo)). Additionally, where the § 924(c) count is predicated on a drug trafficking offense rather than a crime of violence, Defendants request the "type, quantity, and composition of the drug or drugs" allegedly trafficked. (*See, e.g.*, Dkt. 434 at ¶ 48 (Pirk); Dkt. 467 at ¶ 33 (Caruso)).

Except as explained below with respect to Counts 36 and 46, the Court denies the request for further particularization of the § 924(c) counts. First, it is clear from the face of the Indictment which predicate offense underlies each § 924(c) count; the predicate offenses are incorporated by reference into the § 924(c) counts. (*See* Dkt. 33). Second, the type of firearm is not an element of a § 924(c) offense; thus, particularization in that regard is unnecessary. *Patino*, 962 F.2d at 266 ("[C]ourts have rejected claims that the type of firearm alleged in the indictment is an essential element under Section 924(c)(1) and have affirmed convictions where the evidence showed a different type of weapon.").

- 47 -

Third, "[c]ourts routinely deny requests for further particularization of 924(c) counts, including specific dates and places of firearms possession, that span a period of time." *McCoy*, 2016 WL 5335443, at *5; *see also United States v. Simmons*, No. 13-CR-6025CJS, 2016 WL 285176, at *16 (W.D.N.Y. Jan. 22, 2016) (collecting cases denying particularization of § 924(c) counts), *report and recommendation adopted*, No. 13-CR-6025, 2016 WL 1127802 (W.D.N.Y. Mar. 23, 2016). Fourth, on this record—which, as discussed, includes voluminous discovery (including, according to the Government, "results of various search warrants regarding firearms; law enforcement reports documenting recovery of firearms from . . . KMC member co-defendants; [and] photos of KMC members posing with firearms inside KMC Chapter clubhouses in New York and in Tennessee," (Dkt. 554 at 76)), detailed proffers at lengthy detention hearings, and an Indictment that lists, as background, 87 overt acts in furtherance of the RICO conspiracy—the Court finds that Defendants have sufficient information to prepare their defenses to the § 924(c) counts, to avoid unfair surprise, and to interpose a claim of double jeopardy.

Indeed, the Court just recently approved a Protective Order in this case (Dkt. 662), the purpose of which, in part, is to facilitate early disclosure of material pursuant to 18 U.S.C. § 3500. Moreover, this Court intends to issue a pretrial order in this case, after receiving input from all counsel, that will facilitate all parties' preparation for the trial scheduled to commence on January 16, 2018. Additionally, while the Court is cognizant of the concerns expressed by Defendants with their motion to dismiss papers about the alleged multiplicity (and duplicity) of the § 924(c) counts, those issues can be

appropriately addressed at trial and do not justify further particularization to be ordered by the Court.

For these reasons, the Court denies Defendants' requests for particularization of the § 924(c) counts, except with respect to Counts 36 and 46 which is discussed further below.

### III.    Murder in Aid of Racketeering Counts (Counts 19 and 20)

Jenkins seeks a bill of particulars regarding Counts 19 and 20, which both charge murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1):

    a.  The names of all known persons present when this offense allegedly took place;

    b.  The manner in which Mr. Jenkins maintained and increased position with the alleged KMC enterprise by allegedly committing the murders of Paul Maue and Daniel "DJ" Szymanski, respectively;

    c.  The specific location of the alleged crime of violence alleged in the count.

(Dkt. 522 at ¶ 159).

With respect to these counts, the Indictment sets forth: (1) the names and aliases of the defendants charged with the murders in aid of racketeering; (2) the dates of the murders; (3) the nature of the act in aid of racketeering, that is, murder; and (4) the names of the victims of the alleged murders in aid of racketeering. (Dkt. 33 at 42-43); *see also Muyet*, 945 F. Supp. at 599 (denying bill of particulars with respect to counts alleging violent acts in aid of racketeering where the indictment set forth date of violent acts, names of defendants charged in the acts, and nature of each act). Further, the "overt acts" section of the Indictment provides additional detail about the alleged murders, stating,

*inter alia*, that Jenkins "shot and killed Paul Maue and Daniel 'DJ' Szymanski behind the North Tonawanda KMC Chapter clubhouse," that he "drove to the Olean Chapter KMC clubhouse during which time he threw away the firearm used to kill. . . Maue and . . . Szymanski while traveling on Route 219," and "another KMC member burned the clothing that [Jenkins] was wearing when he shot and killed [Maue and Szymanski]." (*Id.* at 24). Moreover, not only has extensive discovery been provided on this subject, as detailed by the Government, but these murders have been extensively and repeatedly discussed during lengthy detentions hearings that have been held in this case. As a result, Jenkins' request for further particularization with respect to Counts 19 and 21 is denied.

## IV.    Felon in Possession (Count 23)

Jenkins seeks particularization of Count 23, charging him with being a felon in possession of a firearm, as follows:

    a. The names of all known persons present on each of the days when this offense allegedly took place;

    b. Specify the nature of the possession, whether it was actual or constructive and if actual, how it was so, on each of the days this offense allegedly took place;

    c. The specific date and time of the alleged acts by Mr. Jenkins constituting a crime of violence that he committed and furthered by possessing a firearm;

    d. The specific location where each act of possession alleged on each day of this offense occurred;

    e. The manner in which the alleged possession was "in and affecting commerce".

(Dkt. 522 at ¶ 159). There are "three simple elements" of the offense of felon in possession under § 922(g)(1): "(1) knowing possession of the firearm [or ammunition], (2) a previous felony conviction, and (3) the possession being in or affecting commerce." *United States v. Smith*, 160 F.3d 117, 121 n.2 (2d Cir. 1998). In this case, the Indictment sets out each of these essential elements constituting the offense of felon in possession of a firearm, as well as the span of two days in which the offense was alleged to have occurred, the date and nature of the underlying prior felony convictions, and the model and serial number of the firearm Jenkins allegedly possessed. (*See* Dkt. 33 at 45). On this record, the Court finds that Jenkins has sufficient information to prepare his defense to this charge and denies his request for particularization of Count 23.

## V.    Distribution of Cocaine and Marijuana (Counts 34 and 35) and related § 924(c) count (Count 36)

Caruso seeks particularization of Counts 34 and 35, which charge him with distribution of cocaine and marijuana, respectively. (Dkt. 467 at ¶¶ 25-26). Count 34 charges Caruso with distribution of cocaine "[b]eginning in or before 2010 and continuing until in or about September 2014, the exact dates being unknown" in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and 18 U.S.C. § 2. Similarly, Count 35 charges Caruso with distribution of marijuana during that same time period, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) and 18 U.S.C. § 2. The location for the alleged crimes charged in both counts is the Western District of New York. Count 36 contains the § 924(c) count related to Counts 34 and 35.

Caruso seeks further particularization with respect to Counts 34 and 35, as follows:

    a. How Mr. Caruso knowingly, intentionally and unlawfully possessed with intent to distribute, and distribute a quantity of cocaine [or marijuana];

    b. Whether the possession was actual or constructive;

    c. The date when Caruso allegedly possessed with the intent to distribute cocaine [or marijuana]. (The Indictment charges "on or before 2010 and continuing in or about September, 2014").

(*Id.*). He similarly seeks various types of information about the underlying alleged drug trafficking in connection with Count 36.

In opposition to Caruso's motion for a bill of particulars, the Government represents that it has provided discovery to Caruso that includes "reports documenting drugs recovered from and/or purchased from KMC members," "reports and photos documenting drug paraphernalia recovered from KMC clubhouses," and "Facebook private messaging documenting a host of KMC members referencing using controlled substances." (Dkt. 503 at 12). However, the Government's description of this discovery is generic in nature, and provides no specificity with respect to these drug trafficking counts asserted against Caruso.

The Government contends that the Indictment "already provides detailed overt acts despite the fact that the United States is not required to prove that any defendant committed a racketeering act or an overt act to prove a RICO conspiracy charge." (*Id.* at 15). Overt Act ¶ 73 alleges that Caruso and Williams, during 2010 through 2014, maintained the premises known as the KMC Westside Chapter clubhouse, at 66 Peoria

Street, Buffalo, New York, "to use, maintain and distribute controlled substances, including cocaine and marijuana."  In Overt Act ¶ 76, Caruso is alleged to have engaged in similar conduct at the KMC North Tonawanda Chapter clubhouse from 2008 through 2014, with Williams, Stacharczyck, Dekay and Myrtle, and in Overt Act ¶ 87, during an at least 10-year time period beginning no later than 2006, Caruso is alleged to have engaged in similar conduct with all Defendants at the KMC South Buffalo Chapter clubhouse.  Additionally, in Overt Act ¶ 82, Caruso is alleged to have distributed cocaine and marijuana inside "various Kingsmen Chapter clubhouses" between 2009 and 2014. (*See* Dkt. 33).  In other words, the time frames alleged in the Overt Act section of the Indictment do not consistently mirror the time frames in Counts 34, 35, and 36.

On the other hand, Caruso cites nothing but Rule 7(f) in support of his motion for a bill of particulars, thus arguably falling short of his burden to show that the information is necessary to the preparation of his defense. *See United States v. Williams*, 88 F. Supp. 3d 117, 120 (N.D.N.Y. 2015) (denying request for bill of particulars where defendant cited "nothing more than Rule 7(f)" and had "made no attempt to demonstrate need to prepare a defense or avoid surprise at trial").

Based on the record before the Court with respect to the requested particularization for Counts 34 and 35, as well as the related firearm charge in Count 36, the Court is not able to ascertain whether a bill of particulars would be appropriate.  At this point, for instance, Count 34 could as easily be viewed as related to alleged cocaine trafficking by Caruso to non-KMC members at non-KMC locations, as it could be viewed as related to the drug trafficking referenced in the Indictment that occurred at various

KMC clubhouses. Similarly, it is not at all clear why this four-year time period is the focus of these counts, and yet the time frames in the Overt Act action are often different.

Accordingly, the Government is directed to submit supplemental papers to the Court addressing Caruso's requests for particularization as to Counts 34, 35, and 36. The Government should identify why it believes that Caruso has enough information about these counts to prepare his defense, with specific reference to documents or other information supporting its position. Caruso may respond to the Government's submission in accordance with the schedule set forth below.

## VI.   Use and Maintenance of Premises for Drug Dealing Counts (Counts 37, 39, 41, 45)

Defendants request particularization of the various counts of the Indictment charging use and maintenance of premises for drug dealing. (*See* Dkt. 383 at 1 (McIndoo requesting particulars of "the 'specific acts' of which he is accused . . . and the precise date, time, and place of those acts"); Dkt. 385 at 23 (Scanlon requesting particularization of Counts 41 and 45); Dkt. 387 at ¶ 17 (Osborne requesting particularization of Counts 41 and 45); Dkt. 392-7 at 17 (Enix requesting particularization of Count 45); Dkt. 434 at ¶ 47 (Pirk); Dkt. 467 at ¶¶ 28, 30, 32 (Caruso requesting particularization of Counts 37, 39, 45); Dkt. 522 at ¶ 159 (Jenkins requesting particularization of Count 45)).

For example, Osborne requests, with respect to Counts 41 and 45, the "day, time, and place, of any conduct material to counts 41 and 45," the "nature, volume, and weight of any controlled substance relevant" to those counts, and "[a]ny scientific tests related to

any controlled substance related to" those counts. (Dkt. 387 at ¶ 17). Enix, Pirk, Caruso, and Jenkins request particularization of Count 45 as follows:

a. The manner by which [Defendant] himself specifically permanently or temporarily maintained the premises described in Count 45;

b. The specific controlled substance or substances that [Defendant] allegedly manufactured, distributed, or used, including the identity of the controlled substance and quantity;

c. How [Defendant] manufactured, distributed, or used each of the specific controlled substances;

d. How [Defendant] allegedly manufactured, distributed, or used each of the alleged controlled substances;

e. The date when [Defendant] allegedly manufactured, distributed, or used each of the controlled substances;

f. The date (or dates) when [Defendant] allegedly maintained the premises; and

g. Whether [Defendant] allegedly permanently maintained the premises or temporarily (and if temporarily, when his alleged maintenance began and ended).

(Dkt. 392-7 at 16-18 (Enix); *see also* Dkt. 434 at ¶ 47 (Pirk); Dkt. 467 at ¶ 32 (Caruso); Dkt. 522 at ¶ 159 (Jenkins)).

The drug premises counts are contained at Counts 37, 39, 41, and 45. Count 37 alleges that Caruso and Williams used and maintained the KMC West Side Chapter clubhouse between in or before 2010 and to in or about 2014, for the purpose of manufacturing, distributing, and using marijuana and cocaine. Count 39 alleges that Caruso, Dekay, Williams, Myrtle and Stacharczyck used and maintained the KMC North Tonawanda Chapter clubhouse between in or before 2008 and to in or about 2014, for the

purpose of manufacturing, distributing, and using marijuana and cocaine.    Count 41
alleges that Osborne and Scanlon used and maintained the KMC Olean Chapter
clubhouse between in or before 2011 and continuing to in or about August 2015, for the
purpose of manufacturing, distributing, and using marijuana and cocaine.

The Court denies Defendants' requests for particularization of these drug premises
counts contained in Count 37, 39, and 41.  For each of those counts, the Indictment
alleges the relevant span of years in which the offense occurred, the controlled substances
involved, and the location of the premises allegedly used.  (Dkt. 33 at 58, 59-60, 61, 63).
Further, to the extent Defendants seek particularization of the controlled substances
involved (such as their "nature, volume, and weight," or any related "scientific tests"
(Dkt. 387 at ¶ 17)), particularization in that regard is unnecessary because the controlled
substance involved is not an element of the offense.  *See* 21 U.S.C. § 856(a)(1); *cf.*
*United States v. Snow*, 462 F.3d 55, 70-71 (2d Cir. 2006) ("To convict, the government
was required to establish beyond a reasonable doubt that the defendant (1) opened or
maintained a place; (2) for the purpose of distributing or packaging controlled substances;
and (3) did so knowingly.").  In essence, Defendants seek information about the *manner*
in which the violation occurred, but that would impermissibly demand evidentiary detail
and unduly intrude upon the government's theories.  *United States v. Sattar*, 272 F.
Supp. 2d 348, 375 (S.D.N.Y. 2003) ("The Government may not be compelled to provide
a bill of particulars disclosing the manner in which it will attempt to prove the charges,
the *precise manner in which the defendants committed the crimes charged*, or a preview
of the Government's evidence or legal theories." (emphasis added)).    Further, the

Indictment's "introduction" to the RICO conspiracy charge provides additional detail as to how the KMC clubhouses were used and maintained as premises for drug dealing; for example, the Indictment alleges that "KMC chapter clubhouses permitted illicit drug use and distribution, including cocaine, marijuana, and other controlled substances, between club members, associates, friends, and supporters of the KMC." (Dkt. 33 at ¶ 18). Indeed, for many of the defendants identified in connection with Counts 37, 39, and 41, there is additional detail concerning the relationship that each defendant had with the specified premises. For example, both Scanlon and Osborne are alleged in paragraph 26 of the Indictment to have served as Olean Chapter President, and it is the KMC Olean Chapter clubhouse that they are alleged to have used and maintained for drug dealing in Count 41. Accordingly, because Defendants are sufficiently informed of the essential facts of these crimes, the Court finds that additional particularization of the drug premises counts set forth in Counts 37, 39, and 41, is unwarranted. *See United States v. Kendrick*, No. 10-CR-6096-FPG, 2015 WL 500805, at *15-16 (W.D.N.Y. Feb. 5, 2015) (denying requested bill of particulars for § 856 counts); *United States v. Taylor*, No. 11CR85A, 2012 WL 12941960, at *3 (W.D.N.Y. Mar. 9, 2012) (denying bill of particulars for § 856 count alleging a four-year time span); *United States v. Ramos-Cruz*, No. 11-CR-151-A, 2014 WL 3533421, at *2 (W.D.N.Y. July 16, 2014) (denying particularization on § 856 count where indictment alleged the time span was from a date unknown to 2009); *see also United States v. Li*, No. 3:16-CR-194, 2017 WL 590275, at *2 (M.D. Pa. Feb. 14, 2017) (denying requested particularization of § 856 counts where the count listed the specific address of the alleged drug-involved premises, noted the relevant date range,

recited the elements of the offense, and cited to the relevant statute); *United States v. Hennings*, No. 02-20332-M1/V, 2003 WL 2005492, at *3 (W.D. Tenn. Feb. 11, 2003) ("An order for a bill of particulars that provides information about the *manner* in which the violation [of 21 U.S.C. § 856] occurred would impermissibly demand evidentiary detail and unduly intrude upon the government's theories.").

However, Count 45 presents a different issue than Counts 37, 39, and 41. Count 45 alleges that each and every one of the named defendants violated 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2 over the course of at least 10 years, by using and maintaining the KMC South Buffalo Chapter clubhouse for the purpose of manufacturing, distributing and using cocaine and marijuana. Count 46 is the § 924(c) count related to Count 45. The Government contends that a bill of particulars is unwarranted for either count and, at the oral argument of the motions, provided some additional detail concerning the basis for each count.[10] However, as with Counts 34, 35, and 36 pertaining to Caruso, the Court is unable based on the present record to ascertain whether a bill of particulars would be appropriate for Counts 45 and 46. The Court appreciates that the parties briefed a myriad of issues in their omnibus motions papers, only some of which are addressed in the present Decision and Order. Accordingly, the Court believes that a more focused submission directed to particularization for Counts 45 and 46 is appropriate.

_____

[10]    At the Court's request, the Government also provided by letter dated May 16, 2017, a catalogue/itemization with supporting documentation of the items seized from the KMC South Buffalo Chapter clubhouse during the search executed on August 26, 2015.

Accordingly, the Government is directed to submit supplemental papers to the Court addressing the requests for particularization as to Counts 45 and 46. The Government should identify why it believes that each Defendant has enough information about these counts to prepare his defense, with specific reference to documents or other information supporting its position. Defendants may respond to the Government's submission in accordance with the schedule set forth below.

## CONCLUSION

For the foregoing reasons, the motions to dismiss are denied, and the motions for bills of particular are denied, except to the extent that particularization is sought for Counts 34-36 and 45-46, with respect to which the Court reserves decision and requests supplemental briefing from the Government within 14 days of the entry of this Decision and Order, with the Defendants seeking particularization on those counts to provide any response within 14 days after the filing of the Government's supplemental briefing, at which point the matter will be taken under advisement by the Court.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: July 24, 2017
        Rochester, New York